909 So.2d 575 (2005)
ST. JOHNS/ST. AUGUSTINE, COMMITTEE, etc., Petitioner,
v.
CITY OF ST. AUGUSTINE, Florida, etc., et al., Respondents.
No. 5D04-3519.
District Court of Appeal of Florida, Fifth District.
September 2, 2005.
Mary Doty Solik and Emerson M. Lotzia, of Foley & Lardner LLP, Orlando, for Petitioner.
Timothy A. Smith, of Akerman Senterfitt, Orlando, and James P. Wilson, St. Augustine, for Respondent, City of St. Augustine.
Frank D. Upchurch, III, and Sidney F. Ansbacher, of Upchurch, Bailey and Upchurch, P.A., St. Augustine, for Respondent, Ponce Associates, LLC.
PER CURIAM.
DENIED.
GRIFFIN and TORPY, JJ., concur.
SHARP, W., J., dissents, with opinion.
SHARP, W., J., dissenting.
I would grant the St. Johns/St. Augustine Committee for Conservation and Recreation, Inc.'s (the Committee) petition for writ of certiorari and direct the circuit court to quash the City of St. Augustine's "Order Adopting Recommended Findings of a Special Master." The order sought to be challenged relates to modifications of a Planned Unit Development (PUD) for a proposed development (the Madeira Development), which was recently annexed into the City and which is being developed by the owner, Ponce Associates, LLC. In my view, the circuit court, in denying certiorari, failed to apply the correct law by ruling it was proper, pursuant to section 171.062(2), Florida Statutes, for the City to modify the PUD before amending its Comprehensive Plan to include the annexed property.
The record below establishes that the property in question consists of a 419-acre parcel, which contains an existing 212-room hotel and an historic golf course. It was located in unincorporated St. Johns County, just north of the City's boundaries.
In 1989, the owner of the property, Ponce de Leon Resort and Convention Center, Inc., obtained PUD approval and rezoning, from the County. It was enabled to operate the existing 212-room hotel, golf course and related facilities. Also approved were 500 additional residential units, an additional 18-hole golf course and an expansion of the existing 18-hole golf course to 27 holes.
In 2001, the owner entered into a pre-annexation agreement with the City, which included as a condition of annexation: "Owner requires that City diligently and expeditiously process certain zoning and comprehensive plan amendment applications.. . ."
The City annexed 1,069 acres, including this property, on June 11, 2001. Simultaneously, the City incorporated the County PUD and amended it. The amendment increased residential density from 500 to 799 units. It also authorized the hotel to add 108 new rooms, approved 192,000 square feet of commercial space, and gave the owner sole discretion to operate the *576 existing 18-hole golf course or to include an additional nine holes.
In 2002, respondent Ponce Associates, purchased this property. In 2003, Ponce Associates applied for final development approval, preliminary plat approval and conservation zones approval. This proposed land use plan further modified the County PUD by providing for 749 residential units and giving the owner the option to remove the golf course and replace it with construction of residential units.[1]
The City Planning and Zoning Board approved the development plan. The Committee and 23 individuals appealed to the City Commission. On October 21, 2003, the City reversed the Board's decision, finding that it had approved a development plan that was inconsistent with the approved PUD, because no golf course was included, as required by the PUD.
Ponce Associates requested relief under section 70.51, Florida Statutes, the "Florida Land Use and Environmental Dispute Resolution Act," which provides for the appointment of a special master to seek a mutually acceptable solution to land use disputes. Dennis Bayer, acting as special master, conducted a hearing. He prepared recommended findings and 51 conditions for approval of the final development plan. He concluded that Ponce Associates had relied in good faith on a letter from the City staff, which assured it that the golf course could be eliminated, and that created a hardship on Ponce Associates when the City took a different position. He also recommended additional buffers, public areas, landscaping and tree considerations.
On March 15, 2004, the City approved the special master's recommended findings and amended the PUD accordingly. However, at no time during this amendment process did the City amend its comprehensive plan to include this property.
The Committee petitioned the circuit court for a writ of certiorari, arguing that the City departed from the essential requirements of the law by failing to adopt a comprehensive plan amendment covering the property, because without a City comprehensive plan that included the property, it could not modify the County PUD. Thus the PUD modifications were illegal.
The circuit court denied the petition, finding that the City's adoption of the special master's recommendations which amended the PUD was proper, because pursuant to section 171.062, Florida Statutes, the City had the power to modify the County PUD so long as the changes were consistent with the County's comprehensive plan. It interpreted the statute as follows:
The Court does not agree with the Petitioner's reading of § 171.062. The statute does not specifically allow or disallow the city from enacting zoning regulations which affect the annexed property. It simply states that if the area was subject to a county land use plan, and county regulation before the annexation, then these regulations remain in effect until the City has amended its comprehensive plan to include the annexed area. While the court recognizes that this language can be read to disallow the City from passing zoning regulations which affect the property until such time as the comprehensive plan is amended, it does not believe this to be the proper reading. To interpret the statute in this manner has the potential to create a situation in which regulations *577 affecting the subject land are ineligible for change for up to six monthsthe period of time between comprehensive plan reviews and amendmentsbecause the city has not yet amended it's (sic) plan, and the land is no longer under the county's control.
There is another reading of the statute which bypasses this problem altogether. As the Court reads the statute, the City is free to regulate the annexed area, so long as the regulations are in accordance with the County's comprehensive plan which was previously in effect. Until the City includes the area within its own comprehensive plan, however, it may not pass regulations in accordance with its own plan. This reading of the statute avoids the state of limbo which the Petitioner's reading could impose on the area. In addition, it is entirely consistent with the tenets of responsible land development which are the essence of any comprehensive plan, in that the area would always be governed by one comprehensive plan or the other.
The Committee seeks certiorari review of this interpretation of the statute.
In a certiorari proceeding concerning administrative action, the circuit court is required to determine (1) whether procedural due process was accorded, (2) whether the essential requirements of law were observed, and (3) whether the administrative findings and judgment are supported by competent substantial evidence. See Haines City Community Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995); Education Dev. Ctr., Inc. v. City of W. Palm Beach Zoning Bd. of Appeals, 541 So.2d 106, 108 (Fla.1989); City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla.1982): Philbrick v. County of Volusia, 668 So.2d 341, 342 (Fla. 5th DCA 1996). The standard of review applicable to the district court of appeal reviewing the circuit court's order is narrower. The appellate court is limited to determining (1) whether the circuit court afforded procedural due process, and (2) whether the circuit court applied the correct law. Heggs, 658 So.2d at 530; Education Dev. Ctr., 541 So.2d at 108; Philbrick, 668 So.2d at 342.
The sole issue for our review in this case is whether the circuit court applied the correct law in determining that the City was authorized, under the statute, to adopt zoning regulations that modified the County PUD, so long as the modifications were in accordance with the County's Comprehensive Plan, in a situation where the property at issue was not included in the City's comprehensive plan. An examination of the statutory scheme governing local comprehensive plans leads me to the conclusion that the City did not have that power.
It is the express purpose of the Local Government Comprehensive Planning and Land Development Regulation Act:
[T]o utilize and strengthen the existing role, processes, and powers of local governments in the establishment and implementation of comprehensive planning programs to guide and control future development.
See § 163.3161(2), Fla. Stat. The intent of the legislature is that all development be in conformity with comprehensive plans and regulations and that all land development regulations be consistent with comprehensive plans. See §§ 163.3194(1) & (2); 163.3164(6) & (23), Fla. Stat.
Each local governmental body, either incorporated municipality or county, must establish a Local Planning Agency (LPA) responsible for preparing the comprehensive plan for that body. See §§ 163.3174(1); 163.3167(1), Fla. Stat. A county is authorized to exercise authority under the act for the total unincorporated *578 area under its jurisdiction. See § 163.3171(2), Fla. Stat. A municipality is authorized to exercise authority for the total area under its jurisdiction. See § 163.3171(1), Fla. Stat. Counties and municipalities may enter into agreements to exercise joint powers under the Act by formal adoption of an official agreement. See § 163.3171(3), Fla. Stat.
Adopted comprehensive plans may be amended by the local governmental body pursuant to section 163.3187, Florida Statutes. Section 163.3189, Florida Statutes, sets forth the process for amending an adopted comprehensive plan. The same basic procedures are utilized for amending an adopted comprehensive plan as are used in the initial adoption of a comprehensive plan as set forth in section 163.3184, Florida Statutes. See § 163.3189(2), Fla. Stat. These procedures include regional, county and municipal reviews, see section 163.3184(5), Florida Statutes, and state planning agency reviews, see section 163.3184(6), Florida Statutes. A notice of intent must be published in a sufficient newspaper, in a prescribed format. See § 163.3184(8), Fla. Stat. The local governing body must hold at least two advertised public hearings on the proposed plan amendment. See § 163.3184(15), Fla. Stat.
Section 171.0413, Florida Statutes, sets forth the specific procedures for municipalities to annex areas of unincorporated territory. Section 171.062, Florida Statutes, sets out the specific effects of annexations. The provisions directly involved in the issue presented in this certiorari proceeding are:
(1) An area annexed to a municipality shall be subject to all laws, ordinances, and regulations in force in that municipality and shall be entitled to the same privileges and benefits as other parts of that municipality upon the effective date of the annexation.
(2) If the area annexed was subject to a county land use plan and county zoning or subdivision regulations, these regulations remain in full force and effect until the municipality adopts a comprehensive plan amendment that includes the annexed area. (emphasis added).
§ 171.062, Fla. Stat.
The interpretation of section 171.062(2), Florida Statutes, as applied to these facts, appears to be a case of first impression in the State of Florida.[2] In my view, a plain reading of the statute does not support the interpretation of the circuit court below. The history of section 171.062(2), Florida Statutes, supports this view. All zoning changes must be consistent with the zoning entity's own comprehensive plan, not the plan in effect for the entity from whom the property is annexed.
Effective October 1, 1974, the Florida legislature in section 7, Ch. 74-190, Laws of Florida, created section 171.062, Florida Statutes, including subsection 2 which reads as follows:
(2) If the area annexed was subject to a county land use plan and county zoning or sub-division regulations, said regulations shall remain in full force and *579 effect until otherwise provided by law; provided that a municipal governing body shall not be authorized to increase, and is expressly prohibited from increasing, or decreasing the density allowed under such county plan and regulations for a period of two years from the effective date of the annexation unless approval of such increase is granted by the governing body of the county.
Effective October 1, 1985, the legislature in section 22, Ch. 85-55, Laws of Florida, amended section 171.062(2), Florida Statutes, as follows:
(2) If the area annexed was subject to a county land use plan and county zoning or subdivision regulations, said regulations shall remain in full force and effect until the area is rezoned by the municipality to comply with its comprehensive plan otherwise provided by law. However, a municipal governing body shall not be authorized to increase, and is expressly prohibited from increasing, or decrease the density allowed under such county plan and regulations for a period of 2 years from the effective date of the annexation unless approval of such increase is granted by the governing body of the county.
Effective 15 May 1993, the Legislature in section 2, Ch. 93-243, Laws of Florida, amended section 171.062(2), Florida Statutes, as follows:
(2) If the area annexed was subject to a county land use plan and county zoning or subdivision regulations, said regulations shall remain in full force and effect until the municipality adopts a comprehensive plan amendment to include the annexed area the area is rezoned by the municipality to comply with its comprehensive plan.
Finally, effective 1 July 1993, the Legislature in section 17, Ch. 93-206, Laws of Florida, amended section 171.062(2), Florida Statutes, to its final form:
(2) If the area annexed was subject to a county land use plan and county zoning or subdivision regulations, these said regulations shall remain in full force and effect until the municipality adopts a comprehensive plan amendment that includes the annexed area area is rezoned by the municipality to comply with its comprehensive plan.
In this case, the property was subject to a County land use plan and County PUD when the City annexed it. The City immediately modified the County PUD before it modified its own comprehensive plan to cover the property and it did so again in 2003, still having failed to adopt a comprehensive plan which included the property.[3] In my view, the fact that the PUD modifications at issue in this case are consistent with the County's comprehensive plan is not relevant. The statute requires that the newly annexed property under a county land use plan and county zoning shall be subject to those established regulations (here the approved County PUD) until the City brings the property under the City's comprehensive plan and modifies the prior zoning or PUD in a manner consistent with itsnot the County'scomprehensive plan.
The contrary interpretation adopted by the circuit court effectively skips and by-passes the public hearing process attendant to Comprehensive Plan amendments. See § 163.3184(15), Fla. Stat. These statutory requirements provide a needed check and balance to insure that the people affected by the Comprehensive Plan, who *580 live within it, have a voice in its change or formulation.
Accordingly, I would issue the writ and remand with directions to the circuit court to quash the City's order.
NOTES
[1] On September 19, 2002, the City's Director of Planning and Building sent a letter to Ponce Associates' attorney, stating that Ponce Associates could eliminate the existing 18-hole golf course without additional approval from the City Commission.
[2] Only three (3) Florida cases were found which cite to section 171.062, Florida Statutes. See Alachua County v. Florida Rock Industries, Inc., 834 So.2d 370 (Fla. 1st DCA 2003) (county could not enforce developer's agreement on property subsequently annexed into city); Martin County v. Dept. of Community Affairs, 771 So.2d 1268 (Fla. 4th DCA 2000) (future annexation area map relating to newly annexed land constituted amendment to City's Comprehensive Plan); Pinellas County v. City of Gulfport, 458 So.2d 436 (Fla. 2d DCA 1984) (no evidence that countywide development plan was adopted by city, therefore, it does not apply to city).
[3] There is no indication from the parties that the City has to date brought this property under the City's Comprehensive Plan.